## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |
|---|---|
| RAMON RIVERA JOSE and ANA BAUTISTA DE RIVERA,  *Plaintiffs,*  v.  HOVENSA, LLC, TURNER ST. CROIX, INC., and NAVISTAR, INC.,  *Defendants.* | Case No. 11-cv-0052 |
| EDWARD GREEN,  *Plaintiff,*  v.  HOVENSA, LLC, TURNER ST. CROIX, INC., and NAVISTAR, INC.,  *Defendants.* | Case No. 11-cv-0053 |

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Rachel E. Morrison, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiffs*

**Sunshine S. Benoit, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant HOVENSA, LLC*

**Douglas L. Capdeville, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Turner St. Croix, Inc.*

**Simone D. Francis, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendant Navistar, Inc.*

**Lewis, District Judge**

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Motions for Remand filed in these consolidated cases on September 12, 2011 by Plaintiffs Ramon Rivera Jose,[1] Ana Bautista de Rivera, and Edward Green. Defendant Navistar, Inc. ("Defendant" or "Navistar") has opposed the motions. For the reasons that follow, the Court will grant the motions and remand these cases to the Superior Court of the Virgin Islands.

### I. BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff Jose Rivera was hired by Defendant Turner St. Croix Maintenance ("Turner") as a Vacuum Truck Driver in September 2002. (Dkt. No. 1-1, ¶ 7).[3] Plaintiff Edward Green was hired by Turner as an Environmental Worker in September 2006. (Dkt. No. 1-1 in 11-cv-53, ¶ 6). Plaintiffs' primary responsibility was to drive throughout the refinery owned by Defendant Hovensa, LLC ("Hovensa") on a daily basis, pick up waste, and transport it to Hovensa's landfill. (Dkt. No. 1-1, ¶ 8).

---

[1] The caption identifies this Plaintiff as "Ramon Rivera Jose," while the body of the Complaint refers to him as Jose Ramon Rivera.

[2] In accordance with established law, "[i]n ruling on a motion to remand premised on alleged jurisdictional defects, 'the district court must focus on the plaintiff's complaint at the time the petition for removal was filed . . . [and] must assume as true all factual allegations of the complaint." *Yellen v. Teledne Cont'l Motors, Inc.*, __ F. Supp. 2d __, 2011 WL 6088636, at *1 (E.D. Pa. Dec. 6, 2011) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).

[3] For ease of reference, the Court will cite paragraphs from the lead case, *Ramon Rivera Jose v. Hovensa, LLC, et al.*, 11-cv-52, except where the allegations pertain specifically to Plaintiff Green.

In September 2007, Hovensa purchased an International 4300 truck—designed, manufactured, and sold by Navistar—to use for waste disposal. Turner assigned the truck to Plaintiffs. (Dkt. No. 1-1, ¶¶ 5, 11). Within one month, Plaintiffs reported to Turner Superintendent Vince Ebbeson that the truck was "installed with an improper bench seat and had no suspension whatsoever." (Dkt. No. 1-1, ¶ 12). Ebbeson informed Plaintiffs that the truck was under warranty and he would contact the manufacturer to discuss the issue. In November and December 2007, Plaintiffs complained to Ebbeson that their backs were beginning to hurt because the seat lacked suspension. In January 2008, Rivera told Ebbeson that his back was so painful that he had to go to his doctor for pain pills. (Dkt. No. 1-1, ¶¶ 16-20). In March 2008, Plaintiffs complained to Turner's safety managers, who agreed that the truck contained an inappropriate seat for Plaintiffs' work and had to be replaced. (Dkt. No. 1-1, ¶¶ 23-31). When Plaintiffs sought medical attention from Pinnacle, Hovensa's medical contractor, they were never examined by a doctor but were given pain killers and topical muscle cream and sent back to work. (Dkt. No. 1-1, ¶ 35).

In September 2008, Plaintiffs complained to Turner's Safety Supervisor that, "because there is no back support, adjustable seats or suspension, [their] lower back[s are] repeatedly slammed into the bench seat without anything other than [their] back[s] absorbing the stress from the road." (Dkt. No. 1-1, ¶ 36). Then, on December 26, 2008, Rivera's back "seized up." (Dkt. No. 1-1, ¶ 45). He went to Pinnacle and was given pain killers and a topical medical cream. When he returned to work the next Monday, he was taken to a doctor for a medical exam. The doctor ordered cortisone injections and recommended surgery if the injections did not work. Rivera's family doctor "finally referred him for an MRI that revealed ruptured dis[c]s located at L3, L4, L5." He was deemed "permanently disabled from driving the truck and can no longer

3

walk without assistance and is unable to sit or stand for more than a few minutes." (Dkt. No. 1-1, ¶¶ 45-51).

Green continued to use the truck until January 29, 2009 when he experienced a shooting pain in his back after driving over a speed bump. He went to Pinnacle and was given pain killers and a muscle rub and told to return to work. He informed Ebbeson that he could not drive the truck again due to his back pain. (Dkt. 1-1 in 11-cv-53, ¶¶ 47-48).

Green underwent four weeks of physical therapy and was advised to see an orthopedic doctor. He went on medical leave for six months. When Green returned to work in July 2009, he notified his managers that he was recovering from a back injury, but they took no action to accommodate his physical limitations. They assigned him to the recovery wells unit, which required him to lift heavy pipes and slam them together to knock out a plunger. After one and one-half weeks, Green's back pain was excruciating. Pinnacle treated him with an ice pack and Motrin. Green was sent home from work "and eventually began receiving treatment for lumbar disc disease." (Dkt. No. 1-1 in 11-cv-53, ¶¶ 55-61).

On December 27, 2010, Plaintiffs Jose Rivera and Ana Bautista de Rivera filed a five-count Complaint in the Superior Court of the Virgin Islands against Hovensa, Turner, and Navistar alleging causes of action for personal injury, products liability, and loss of consortium. They sought an award of general damages, special damages, punitive damages, and attorney's fees. (Dkt. No. 1-1). Navistar was served on April 19, 2011 and removed this action to federal court on May 18, 2011, alleging that the joinder of Defendants Turner and Hovensa should be disregarded for purposes of diversity jurisdiction based on the fraudulent joinder doctrine. (Dkt. No. 1 at 1-3). According to the Complaint, Plaintiffs are citizens of the Virgin Islands; Turner is a Virgin Islands corporation; Hovensa is a joint venture between subsidiaries of Hess

Corporation and Petroleos de Venezuela, S.A., and is the owner and operator of an oil refinery in St. Croix, Virgin Islands;[4] and Navistar is a Delaware corporation with its principal place of business in Illinois. (Dkt. No. 1-1, ¶¶ 2-6).

On January 28, 2011, Green commenced a civil action in the Superior Court of the Virgin Islands against Navistar, Hovensa, and Turner alleging similar causes of action for personal injury and products liability. Navistar was served on April 19, 2011 and removed this action to federal court on May 18, 2011, also alleging that the joinder of Turner and Hovensa was improper based on the fraudulent joinder doctrine. (Dkt. No. 1 in 11-cv-53 at 1-3). For diversity purposes, Green is a citizen of the Virgin Islands. (Dkt. No. 1 in 11-cv-53, ¶ 2).

Navistar answered both Complaints on June 6, 2011; Turner filed a motion to dismiss for failure to state a claim in both actions on July 21, 2011. (Dkt. Nos. 4, 6). On September 12, 2011, Plaintiffs filed motions to remand the cases to the Superior Court of the Virgin Islands, which Navistar opposed. (Dkt. No. 11 in 11-cv-52; Dkt. No. 9 in 11-cv-53). The cases were consolidated on February 29, 2012. (Dkt. No. 22).

## II. DISCUSSION

### A. Removal and Remand

It is well established that a federal court must "satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998)).

---

[4] While Plaintiffs did not state explicitly that Hovensa is a citizen of the Virgin Islands for diversity purposes, the parties have fashioned their arguments as if they had so alleged. In *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 357 (3d Cir. 2007), the Third Circuit described Hovensa as "a limited liability corporation, incorporated in the U.S. Virgin Islands with its principal place of business in St. Croix."

5

Accordingly, as a threshold matter, the Court must determine that its exercise of diversity jurisdiction is proper. *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006).

Pursuant to 28 U.S.C. § 1441(a), a defendant "has the right to remove a civil action from state court if the case could have been brought originally in federal court." *Id.* Navistar removed this action under 28 U.S.C. § 1441(b), which permits removal under the diversity jurisdiction statute, 28 U.S.C. § 1332. "For a removal predicated upon diversity of citizenship, a proper exercise of federal jurisdiction requires satisfaction of the amount in controversy requirement as well as complete diversity between the parties, that is, every plaintiff must be of diverse state citizenship from every defendant." *Id.*[5] Conversely, the presence of a non-diverse party automatically destroys subject matter jurisdiction. *See Brown v. JEVIC*, 575 F.3d 322, 327 (3d Cir. 2009). A party urging jurisdiction on a federal court bears the burden of proving that jurisdiction exists. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011).

Plaintiffs' motion to remand was filed pursuant to 28 U.S.C. § 1447(c) which provides, in pertinent part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The removal statutes "are to be strictly construed, with all doubts to be resolved in favor of remand." *Brown*, 575 F.3d at 326.

### B. The Fraudulent Joinder Doctrine

The fraudulent joinder doctrine "represents an exception to the requirement that removal be predicated solely upon complete diversity." *Briscoe*, 448 F.3d at 215-16. If a lawsuit contains defendants who do not possess citizenship that is diverse from the plaintiff, the diverse defendant

---

[5] Plaintiffs do not contest that the damages requested in each case exceed the statutory $75,000 amount in controversy required for diversity jurisdiction under 28 U.S.C. § 1332(a).

"may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216.

The fraudulent joinder standard is well established. "'Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *First Am. Title Ins. Corp. v. JP Morgan Chase & Co.,* 384 F. App'x 64, 67 (3d Cir. 2010) (quoting *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). A district court "'must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.'" *Lewis v. John's Auto Ctr., Inc.,* 2011 WL 4566110, at *4 (D.V.I. Sept. 29, 2011) (quoting *Boyer*, 913 F.2d at 111). The removing defendant "'carries a heavy burden of persuasion'" to demonstrate fraudulent joinder. *Briscoe,* 448 F.3d at 217 (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)). The Third Circuit has warned that, in determining whether a party is fraudulently joined, district courts must not step from a "threshold jurisdictional issue into a decision on the merits." *Id.* at 218.

If a district court determines that joinder was fraudulent, it can "'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Id.* at 216 (citation omitted). On the other hand, if a court finds that it does not have subject matter jurisdiction over the removed action because joinder was not fraudulent, "it must remand to state court." *Id.*

### C. Analysis

In its Notice of Removal, Navistar argued that the joinder of Hovensa and Turner was fraudulent for separate reasons. Because the Court finds that the joinder of Hovensa was not

fraudulent, and therefore complete diversity does not exist, it need not, and will not, address Navistar's contentions concerning Turner.

Navistar claims that the accrual date for Plaintiffs' injuries was as early as October of 2007 and as late as December 2007, as a matter of law, because Plaintiffs complained about the condition of the truck seat in October 2007, complained of back pain in November 2007, and indicated that they considered the seat to be causing their back pain since December 2007. (Dkt. No. 1 at 8-9). Navistar further argues that since Rivera and Green did not file suit until December 27, 2010 and January 28, 2011, respectively, and there is no basis to equitably toll the statute of limitations, both filings are well outside the governing two-year statute of limitations. Accordingly, Navistar concludes that the Court can determine from the face of the Complaints that "Plaintiffs brought their claims against HOVENSA beyond the applicable statute of limitations, and therefore, fraudulently joined HOVENSA in this litigation." (Dkt. No. 1 at 6-7).

Plaintiffs contend that Rivera was injured on December 26, 2008, when his back "seized up," and he filed his Complaint within the statute of limitations on December 27, 2010. (Dkt. No. 16 at 6). Similarly, Plaintiffs maintain that Green's injury occurred on January 29, 2009, when he experienced shooting pain in his back after driving over a speed bump, and he filed his Complaint on January 28, 2011, also within the two year statute of limitations. (Dkt. No. 13 in 11-cv-53 at 6). As a result, Plaintiffs argue that the statute of limitations does not bar their claims and Hovensa was not fraudulently joined.

The Third Circuit has held that a statute of limitations defense is "properly considered in connection with a fraudulent joinder inquiry." *Brown,* 575 F.3d at 327; *see also Briscoe*, 448 F.3d at 219 (opining that "[i]f a district court can discern, as a matter of law, that a cause of

action is time-barred under state law, it follows that the cause fails to present even a colorable claim against the non-diverse defendant.").

A federal court sitting in diversity looks to "'state law to determine when an action is commenced for purposes of the state's statute of limitations.'" *Morris v. Hoffa,* 2002 WL 524037, at *2 (E.D. Pa. Apr. 8, 2002) (quoting *Patterson v. Am. Bosch Corp.,* 914 F.3d 384, 387 (3d Cir. 1990)). Under Virgin Islands law, a two-year statute of limitations is prescribed for personal injury actions. *See* 5 V.I.C. § 31(5)(A) (establishing two-year limitations period for "[a]n action for . . . any injury to the person or rights of another not arising on contract and not [otherwise] enumerated.").[6] Further, "'[i]t is well-settled that the statute of limitations on a cause of action generally begins to run when the cause of action accrued.'" *Lewis,* 2011 WL 4566110, at *5 (quoting *Hypolite v. Marriott Ownership Resorts (St. Thomas), Inc.*, 52 V.I. 175, 180 (V.I. Super. Ct. 2009)). "A cause of action accrues when 'the essential facts that give rise to that cause of action' occur." *Id.* (quoting *Hypolite*, 52 V.I. at 180).

To determine whether Plaintiffs' claims against Hovensa are time-barred by the two-year statute of limitations, "the Court must determine when those claims began to accrue. In the Virgin Islands, the 'discovery rule' may toll the applicable statute of limitations where the injury

---

[6] 5 V.I.C. § 31(5)(A) does not define "injury." Under Virgin Islands law, "[t]he rules of the common law, as expressed in the restatements of the law. . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." 1 V.I.C. § 4. The *Restatement (Second) of Torts* defines "injury" as an "invasion of a legally protected interest which, if it were the legal consequence of a tortious act, would entitle the person suffering the invasion to maintain an action of tort." *Restatement (Second) of Torts* § 7 cmt. a (1965). The definition clarifies that the meaning of the word injury "differs from the sense in which the word 'injury' is often used, to indicate that the invasion of the interest in question has been caused by conduct of such a character as to make it tortious." *Id.*

is latent or is not readily ascertainable," as appears to be the case here. *L'Henri, Inc. v. Vulcan Materials Co.*, 2010 WL 924259 at *3 (D.V.I. Mar. 11, 2010).

> In its classic form, the discovery rule operates to prevent the relevant statute of limitations, here the two year statute of limitations, from beginning to run. Under the rule, the statute of limitations will start to run at the time that two conditions are satisfied: (1) when the plaintiff knew or should have known that he had suffered a harm[7] *and* (2) when the plaintiff knew or should have known the cause of his injury. . . . [B]oth of these determinations are made using an objective, reasonable person standard.

*Harthman v. Texaco, Inc. (In re Tutu Wells Contamination Litig.)*, 909 F. Supp. 980, 985 (D.V.I. 1995) (citations omitted). The discovery rule requires a plaintiff to "exercise. . . reasonable diligence" to determine the "critical facts" that satisfy both conditions of the rule. *Id.* at 986. "To demonstrate reasonable diligence, a plaintiff must 'establish [ ] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'" *L'Henri, Inc.*, 2010 WL 924259, at *3 (quoting *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006)).

"Generally, determinations as to whether a plaintiff 'failed as a matter of law to exercise reasonable diligence for purposes of the discovery rule and equitable tolling . . . are typically within the [fact finder's] province[.]'" *Bd. of Dirs., Bluebeard's Castle Hilltop Villa Condo. Ass'n v. Cavanaugh (In re Equivest St. Thomas Inc.)*, 2010 WL 4343616, at *6 (Bankr. D.V.I.

---

[7] The *Restatement (Second) of Torts* defines "harm," *inter alia,* as "the detriment or loss to a person which occurs by virtue of, or as a result of, some alteration or change in his person, or in physical things, and also the detriment resulting to him from acts or conditions which impair his physical, emotional, or aesthetic well-being[.]" *Restatement (Second) of Torts* § 7 cmt. b (1965). The Restatement also explains the difference between "harm" and "injury": "'injury' differs from the word 'harm' in this: 'harm' implies the existence of loss or detriment in fact, which may not necessarily be the invasion of a legally protected interest. The most usual form of injury is the infliction of some harm; but there may be an injury although no harm is done." *Restatement (Second) of Torts* § 7 cmt. a.

10

Nov. 1, 2010) (citation omitted). On the other hand, "where the facts are so clear that reasonable minds cannot differ, the commencement [of the statutory limitations] period may be determined as a matter of law." *Smith v. V.I. Port Auth.,* 2010 WL 1381222, at *7 (D.V.I. Mar. 31, 2010) (quoting *Debiec v. Cabot Corp.*, 352 F.3d 117, 128-29 (3d Cir. 2003)). "The purpose of the discovery rule is to ensure that a plaintiff is not unfairly denied right of access to the court because he or she failed to file his or her claim within the statutory time period." *Simmonds v. Gov't of the V.I.,* 2009 WL 1117307, at *4 n.18 (D.V.I. Apr. 22, 2009).

The salient question here, with regard to the applicability of the discovery rule, is when Plaintiffs "knew or should have known that [they] had suffered a harm." *Tutu Wells Contamination Litig.*, 909 F. Supp. at 985. The date of Plaintiffs' harm, and the resulting accrual date of their injuries, is difficult to identify. Plaintiffs did not suffer the kind of traumatic injury in an accident, for example, that occurred on a particular date, which would have made their accrual date easier to determine. Rather, when viewing the allegations in the Complaints as true, it appears that they may have suffered harm over time and that their injuries may have been progressive: riding in the truck continued to be debilitating until each Plaintiff reached a physical tipping point—in Rivera's case, his back "seized up," and in Green's case, he experienced a shooting pain in his back, which resulted in diagnoses of ruptured discs and lumbar disc disease, respectively.

Navistar invites the Court to hold that Plaintiffs' injuries accrued, as a matter of law, at the moment they first complained of back pain. The Complaints indicate that Plaintiffs informed Turner and Hovensa managers that they were suffering back pain as early as November 2007, which they attributed to riding in the International 4300 truck. Nevertheless, Plaintiffs continued to work for over a year while experiencing pain. They twice sought medical care from Pinnacle,

11

which never diagnosed them with ruptured discs or lumbar disc disease, or warned them that continuing to ride in the truck may be disabling or that they were suffering a harm. Pinnacle only provided temporary measures to alleviate their pain. In order to determine when Plaintiffs suffered a harm and when their causes of action accrued—a determination that may require medical expertise—the facts in this case need to be developed to a much greater extent, particularly given what appears to be the progressive nature of Plaintiffs' debilitating injuries. Accordingly, the Court finds that it is not possible to determine, as a matter of law from the face of the Complaints, when Plaintiffs should have been reasonably expected to know they suffered a harm.

Case law buttresses this conclusion. Various state courts have discussed the difficulty of establishing the point when a statute of limitations begins to run in cases of progressive injury. *See, e.g., Chandler v. Pinnacle Foods,* 2010 WL 1138869, at *3 (Del. Super. Ct. Mar. 22, 2010) (noting that workers' compensation board made three findings about when plaintiff should have recognized nature, seriousness, and probable compensable character of her low back pain, which indicated "how difficult it is to determine when the statute of limitations begins when the claimant's injury is progressive in nature."); *Baker v. IGA Super Valu Food Store*, 990 So. 2d 254, 260 (Miss. Ct. App. 2008) (surveying cases where statute of limitations was tolled in instances where claimant sustained a latent or progressive injury); *Gloria v. Neb. Pub. Power Dist.*, 438 N.W.2d 142, 144 (Neb. 1989) (stating that "[t]he facts surrounding the injury incurred by the appellee must be examined in order to determine whether the disability from which the appellee now suffers is within the scope of the 'latent and progressive injury' exception to the statute of limitations."); *Roadway Express, Inc. v. Workers' Compensation Appeal Bd.*, 708 A.2d 132, 136 (Pa. Commw. Ct. 1998) (reviewing Pennsylvania decisions recognizing difficulty in

isolating the moment when plaintiff's hearing was lost for statute of limitations purposes because of progressive nature of hearing loss).[8]

In addition, a plethora of cases hold that the accrual date in personal injury cases, often in the context of motions to dismiss—*i.e.*, before factual development, as is the case here—is highly fact specific. *See L'Henri, Inc.,* 2010 WL 924259, at *2 (observing that statute of limitations defense "'usually implicates factual questions as to when plaintiff discovered or should have discovered the elements of the cause of action; accordingly, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.'") (citation omitted); *Sungard Recovery Servs. L.P. v. Unisource Worldwide, Inc.,* 2002 WL 32107630 at *3 (E.D. Pa. Dec. 3, 2002) (concluding that issues of fact existed involving accrual of injury, and denying motion to dismiss); *Andrews v. N.J. Transit Bus Operations, Inc*., 1999 WL 447099, at *6 (D.N.J. June 23, 1999) ("The question of when a plaintiff should have known of the accrual of his cause of action is generally an issue of fact to be determined by a jury."); *Ward v. City of Phila. (In re City of Phila.)*, 705 F. Supp. 1097, 1100 (E.D. Pa. 1989) (stating that, "[i]n the face of this uncertainty regarding the time at which defendants caused, or plaintiffs suffered, the injuries that form the basis of plaintiffs' cause of action, it seems prudent to deny defendants' motion to dismiss. The determination of when defendants' nonfeasance and plaintiffs' injuries became sufficiently apparent to alert plaintiffs to their cause of action depends on factual findings. As such, the issue's resolution should await further development of the record.").

---

[8] In *Mix v. Delaware & Hudson Ry. Co., Inc.,* 345 F.3d 82 (2d Cir. 2003), the Second Circuit discussed gradual hearing loss in a case brought under the Federal Employers' Liability Act, which applies the discovery rule. The court described the problems associated with applying the discovery rule in cases of gradual injury: "Despite the apparent simplicity of the discovery rule, its application does not necessarily function effectively in the context of gradual injuries. Unlike traumatic injuries, the existence and causes of gradual injuries are often elusive." *Id.* at 88.

Given that courts must resolve all contested issues of substantive fact in favor of a plaintiff when faced with a question of fraudulent joinder, coupled with the heavy burden of persuasion imposed on a party seeking to demonstrate fraudulent joinder, the Court is not prepared to hold, based solely on the allegations in the Complaints, that the statute of limitations precludes the cause of action against Hovensa. *See Briscoe*, 448 F.3d at 219 ("[A] district court must rule out any possibility that a state court would entertain the cause before holding that joinder of a non-diverse defendant was fraudulent."). In addition, case law emphasizes the fact intensive nature of this inquiry in pointing out that the determination of reasonable diligence for purposes of the discovery rule is usually within the fact finder's province. Finally, the Court is cognizant of the Third Circuit's caution that its jurisdictional examination of fraudulent joinder must not be transformed into a merits analysis. Navistar's fraudulent joinder argument bleeds into such a merits inquiry when attempting to persuade the Court that Plaintiffs' awareness of their harms and reasonable diligence can be determined as a matter of law.

Since Plaintiffs and Defendant Hovensa are Virgin Islands citizens, complete diversity does not exist in this case. *See Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 695 (3d Cir. 1995) (observing that, to establish federal subject matter jurisdiction based on diversity of citizenship, "diversity must be complete; that is, no plaintiff can be a citizen of the same state as any of the defendants."). As a result, this Court lacks subject matter jurisdiction over both Rivera's and Green's Complaints, and must remand these cases to the Superior Court.

### III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' motions for remand in *Jose v. Hovensa, LLC*, 11-cv-52 (Dkt. No. 11) and *Green v. Hovensa, LLC*, 11-cv-53 (Dkt. No. 9), and **REMANDS** these cases to the Superior Court of the Virgin Islands.

An appropriate Order accompanies this Memorandum Opinion.

June 18, 2012 _____/s/_____
WILMA A. LEWIS
District Judge